UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

| | | |
|---|---|---|
| ALEJANDRO GAMEZ, | ) | |
|     a/k/a RIVAS CABRAL-FERN | ) | |
| | ) | |
| v. | ) | NO. 2:10-CV-13 |
| | ) | *Greer/Inman* |
| UNIVERSITY EYE SURGEONS, P. C.; | ) | |
| BRADLEY L. PEARMAN, M. D. | ) | |

## **MEMORANDUM and ORDER**

Alejandro Gamez, a/k/a/ Rivas Cabral-Fern, now a prisoner in the Federal Detention Center in Oakdale, Louisiana, brings this *pro se* civil rights action for damages under 42 U.S.C. § 1983,[1] alleging that he was assaulted while he was an inmate in the Hamblen County Detention Center [HCDC] and, thereafter, was subjected to medical mistreatment by his treating physician, Bradley L. Pearman, M.D., and University Eye Surgeons, P.C., who, presumably, is the professional corporation with which Dr. Pearman is affiliated.

### I. **The Filing Fee**

Plaintiff has submitted an application to proceed *in forma pauperis* and an affidavit, which reflects that he lacks sufficient financial resources to pay the full

---

[1] At the time plaintiff filed this case, he was detained in the HCDC.

filing fee of $350.00 at once. *See* 28 U.S.C. § 1914(a). Nonetheless, because plaintiff is a prisoner, he is **ASSESSED** the civil filing fee, to be paid on an installment basis. 28 U.S.C. § 1915; *McGore v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). Therefore, the custodian of inmate trust accounts at the institution where plaintiff now resides is **DIRECTED** to submit to the Clerk of Court, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to his inmate trust account or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) and (B). Afterwards, the custodian shall submit twenty percent (20%) of plaintiff's preceding monthly income credited to his account,

but only when the amount in the account exceeds ten dollars ($10), until the full $350 fee has been paid to the Clerk of Court.

28 U.S.C. § 1915(b)(2).

The Clerk is **DIRECTED** to mail a copy of this Order to the custodian of inmate trust accounts at plaintiff's place of confinement to facilitate compliance with the assessment procedures outlined herein. All payments should be sent to the <u>Clerk's Office, USDC; 220 W. Depot Street, Suite 200; Greeneville, TN 37743.</u>

## II. The Screening Procedure

The Court must now review the complaint to determine whether it states a claim entitling plaintiff to relief or is frivolous or malicious or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) and § 1915A; *McGore*, 114 F.3d at 607. If the complaint does not state a claim, is frivolous or malicious, or seeks damages from an immune defendant, this suit must be dismissed.

A. **Plaintiff's Allegations**

From the complaint and accompanying documentation, the Court has constructed the following sequence of events. On July 1, 2008, plaintiff was assaulted by another inmate with a mop handle, which caused him to sustain a traumatic injury

to his right eye and required him to be airlifted to the University of Tennessee Medical Center for emergency medical care. Ten days later, defendant Pearman, an ophthalmologist, saw plaintiff for the first time; diagnosed him as having diplopia, or double vision, caused by swelling in the nerves of the eye; advised him that the problem might go away, but that, if the problem persisted, to return for a visit in eight weeks; and memorialized his assessment of plaintiff in a clinical note and in a subsequent letter.[2]

Plaintiff developed an infection in his eye and, on September 30, 2008, he returned for the second visit with Dr. Pearman, who, according to plaintiff's contentions, diagnosed him once again with diplopia. However, as recorded in the assessment, plaintiff complained of diplopia, but Dr. Pearman did not believe that intervention was appropriate at the time, since "the only place (he could) find an objective finding of (plaintiff's) diplopia (was) in upgaze." (Compl., Ex. 2).

After the visit with defendant doctor, plaintiff filed a claim for a crime victim's

---

[2] The clinical note reads: "I recommend follow up in eight weeks if his diplopia hasn't resolved. Otherwise, if he is not complaining there is no need for follow up." (Compl., Exh. 2). In the relevant part of the letter, dated two months later (i.e., September 11, 2008), Dr. Pearman wrote: "As stated in my note in July, he should have follow up in eight weeks if he persisted with double vision. If his double vision is resolved, since there was no evidence of an intraocular injury, there was no need for follow up of this problem from an ophthalmic standpoint." (*Id*.).

compensation with the Tennessee Claims Commission. On February 20, 2009, plaintiff was seen for the third time by Dr. Pearman, who noted that, while his patient continued to complain of double vision and of some discomfort, he found no objective signs to verify those complaints.

On August 10, 2009, after a hearing on plaintiff's claim for compensation, the Claims Commissioner ordered that plaintiff be given another examination by Dr. Pearman. (Compl., Ex. 5, Claims Commissioner's Order of Oct. 28, 2009). The examination was performed on September 4, 2009. In the assessment issued on that date, defendant doctor found no residual impairment from plaintiff's prior injury, no ophthalmic abnormalities associated with the injury, and no indication of temporary or permanent impairment. (Compl., Ex. 1). In an order entered August of 2009, plaintiff's claim for victim's compensation was denied on the basis of a lack of proof that plaintiff had incurred a "permanent injury from the attack." (Compl., Ex. 5, Claims Comm'r's Order).

The Court infers, from the allegations and data in these filings, that plaintiff's central claim is that Dr. Pearman verbally diagnosed him as having permanent diplopia and verified that diagnosis in some, but not all, of plaintiff's assessments, but later reported that the injury was not permanent. Thus, it is plaintiff's contention that this defendant lied to him, discriminated against him—plaintiff is Hispanic—and

inadequately examined him. As a result of Dr. Pearman's alleged misdeeds and medical mistreatment, it is plaintiff's contention that he lost his right to state compensation for his eye injury—a remedy to which he legally was entitled as a victim of a violent crime.

A. **Law & Analysis**

To state a claim under 42 U.S.C. § 1983, plaintiff must show: (1) that he was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States of America and (2) that the deprivation was caused by a person acting under the color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978). Both elements are missing here.

1. *A Constitutional Deprivation*

(a) *Medical Claims*: Prison authorities who are deliberately indifferent to the serious medical needs of prisoners violate the Eighth Amendment rights of those prisoners. *Estelle v. Gamble*, 429 U.S. 97 (1976). However, where a prisoner receives some medical care and the dispute is over its adequacy, no claim has been stated. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). By the same token, no viable Eighth Amendment claim is stated by allegations that a medical condition has been negligently diagnosed or treated, and the mere fact that the victim happens to be a prisoner does not convert it into a constitutional violation. *Estelle*, 429 U.S.

6

at 106. The Constitution does not protect from inadequate medical treatment, as is alleged here. Nor does it protect plaintiff from having lies told about the permanence of an injury. *Yost v. Ryan*, 1990 WL 12184, *1 (6th Cir. Feb. 13, 1990) (plaintiff who alleged that defendant committed perjury when she testified unfavorably to him did not state a valid § 1983 claim).

      (a) *Discrimination Claim:* Plaintiff's allegation that he was subjected to discrimination may well have stated a viable Fourteenth Amendment claim, if he had offered any factual development, beyond the mere contention that he is Hispanic. As it is, there is nothing which sets forth any action, discriminatory or otherwise, on the part of defendant physician from which to infer a discriminatory animus. Thus, this allegation is conclusory and such a factually unsupported contention fails to state a viable section 1983 claim for relief.

    1. <u>State Action</u>

Equally significant is the lack of any indication that state action was involved in plaintiff's medical treatment and subsequent reports. "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks and citation omitted). However, the conduct of a private defendant is actionable under § 1983 if the conduct can be fairly attributable

to the state, *See Catz v. Chalker*, 142 F.3d 279, 289 (6th Cir. 1998); *Collyer v. Darling*, 98 F.3d 211, 231-32 (6th Cir. 1996), *cert. denied*, 520 U.S. 1267 (1997), and the conduct of a private party may be fairly attributable to the state only if the conduct is so closely connected to the state that it may be fairly treated as that of the state.

Here, there is no allegation whatsoever that defendant doctor is a state actor or any facts from which to infer that his challenged actions may be fairly attributed to the state. Thus, absent this element, plaintiff's section 1983 claims are doomed to fail.

### III. Conclusion

Because plaintiff has failed to state a viable claim under 42 U.S.C. § 1983, this lawsuit will be dismissed by separate order.


**ENTER**:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE